UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| PETER DIROSA, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 2:11-cr-00193-GZS |
| | ) | 2:15-cv-00185-GZS |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent | ) | |

**RECOMMENDED DECISION ON 28 U.S.C. § 2255 MOTION**

In this action, Petitioner Peter DiRosa moves, pursuant to 28 U.S.C. § 2255, to vacate, set aside or correct his sentence. (Motion, ECF No. 150.)  Following a jury trial, Petitioner was convicted of one count of wire fraud, and the Court sentenced him to a term of 57 months in prison. (Judgment, ECF No. 132 at 1-2; Verdict Form, ECF No. 121.)  The First Circuit upheld the conviction and sentence on appeal.  *United States v. DiRosa*, 761 F.3d 144 (1st Cir. 2014).

In his section 2255 motion, Petitioner asserts eleven grounds, which can be summarized as follows: (1) the Government committed misconduct when it failed to prosecute a witness against whom conspiracy charges were dismissed, and counsel was ineffective because he failed to object to the Government's decision to grant immunity to that witness (Grounds One and Two); (2) certain evidence should have been offered and admitted.  (Grounds Three, Five, Six, and Eight); (3) other evidence should have been excluded (Grounds Four and Ten); (4) at sentencing, the Court should not have increased the offense level for obstruction of justice (Ground Seven); (5) the evidence was insufficient (Ground Nine); and (6) the sentence was unreasonable (Ground Eleven).

In Ground Ten, Petitioner also claims ineffective assistance of counsel in connection with several of the grounds.

The Government has requested summary dismissal.  (Response, ECF No. 162.)  After consideration of Petitioner's motion and the Government's request for dismissal, I recommend that the Court grant the Government's request, and dismiss Petitioner's motion.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In May 2011, the Government filed a criminal complaint in which it alleged that Petitioner and Thomas Renison conspired to commit fraud through means of interstate and foreign commerce.  (Complaint, ECF No. 1.)  Petitioner was indicted in October 2011, pursuant to 18 U.S.C. § 1343, for wire fraud based on a transaction in which Petitioner and Renison convinced the then 75-year-old victim "to invest $600,000 in an elaborate scheme surrounding a real estate development project in Polgardi, Hungary."  *DiRosa*, 761 F.3d at 147.  (Indictment, ECF No. 42.)  The complaint against Renison was dismissed with the Government's consent.  *DiRosa*, 761 F.3d at 149.  Renison, the victim, and Petitioner, and others, testified at Petitioner's jury trial, which was held over three days in January 2013.  *Id.* at 150.  The jury returned a guilty verdict.  *Id.*

At sentencing, the Court adopted the presentence investigation report, and added a two-level enhancement for obstruction of justice.  (Sentencing Tr., ECF No. 145 at 42-44; Statement of Reasons, ECF No. 133 at 1.)  The Court calculated the offense level as follows: the base offense level was 7, pursuant to U.S.S.G. § 2B1.1(a)(1), to which the following three enhancements were added: (1) 14 levels, pursuant to U.S.S.G. § 2B1.1(b)(1)(H), because the victim lost between $400,000 and $1,000,000; (2) two levels, pursuant to U.S.S.G. § 2B1.1(b)(10)(B), because a substantial part of the fraud scheme was committed from outside the United States; and (3) two levels, pursuant to U.S.S.G. § 3C1.1, for obstruction of justice.  (Sentencing Tr. at 44-45.)  The

Court found that the total offense level was 25, and that Petitioner had a category I criminal history; the Court thus determined that the sentencing guidelines range was from 57 to 71 months.  (*Id.* at 45.)

The Court based the obstruction of justice enhancement on several findings, any of which independently would warrant the enhancement.  (*Id.* at 42-43.)  The findings were (1) that Petitioner committed perjury when he testified regarding his intent to repay the victim in six months; (2) that Petitioner made false statements regarding the existence of a board of directors and an advisory board for the real estate project; (3) that Petitioner repeated false statements in a February 7, 2013, statement that he provided to the probation officer; and (4) that Petitioner committed perjury when he testified regarding a line of credit.  (Sentencing Tr., ECF No. 145 at 28, 42-44; Statement of Reasons, ECF No. 133 at 1.)  The Court noted Petitioner's objection to the obstruction of justice enhancement, but Petitioner voiced no other objections to the Court's guidelines calculation.  (*Id.* at 45.)

The Court then considered all of the sentencing factors set forth in 18 U.S.C. § 3553(a), particularly the nature and circumstances of the offense, Petitioner's history, the seriousness of the offense, the need to promote respect for the law, just punishment, and deterrence.  (*Id.* at 45-49.) The Court sentenced Petitioner to a term of 57 months in prison, followed by three years of supervised release.  (Sentencing Tr. at 49; Judgment at 2-3.)

On appeal, Petitioner unsuccessfully challenged the conviction on three grounds.  First, Petitioner argued that the Government failed to prove that he made false statements to the victim because (a) Renison was the person who did most or all of the talking with the victim, (b) Renison provided the victim with the written materials about the project and the loan document, and (c) Renison caused the victim to wire the money abroad.  *DiRosa*, 761 F.3d at 150.  The First Circuit

rejected the argument because Petitioner reasonably could have foreseen that Renison's material misrepresentations, which were made to the victim in Petitioner's presence at their meetings, would result in the victim's decision to wire funds abroad. *Id.* at 148, 151. The Court also noted that Petitioner "was in charge of creating some of the critical marketing material that was presented to" the victim. *Id.* The First Circuit concluded that "there was no shortage of evidence in the record from which a jury could have reasonably concluded that the government proved all of the essential elements of wire fraud under 18 U.S.C. § 1343." *Id.* at 152.

Second, Petitioner argued that the trial court erred in admitting evidence of Petitioner's prior bad acts. (*Id.*) The acts consisted of representations that Petitioner had made to two other victims in the late 1990s and early 2000; the First Circuit noted that the earlier representations bore an "uncanny" resemblance to those at issue in the criminal prosecution, and, therefore, the Court was less concerned about the time between the prior bad acts and the charge for which Petitioner was being prosecuted. *Id.* at 152-53. The First Circuit held that the trial court did not abuse its discretion in determining, pursuant to Fed. R. Evid. 403, that the probative value of the evidence substantially outweighed the danger of unfair prejudice, given that the evidence was "highly probative" of Petitioner's intent to defraud and his reasonable belief that the victim "was not likely to recoup any, much less all, of his investment."[1]  *Id.* at 153-54. The Court also noted that Petitioner could point to no other evidence that the Government could have used to prove Petitioner's intent to defraud the victim. *Id.* at 154.

Third, Petitioner argued that the victim's testimony about statements made by Renison during their meetings was inadmissible hearsay because the Government "failed to prove by a

---

[1] One of the earlier victims testified that he lost $220,000. (Trial Tr. I, ECF No. 142 at 219-20.) The other earlier victim testified that he, his wife, and his brother-in-law together lost $150,000, plus an additional $25,000. (Trial Tr. II, ECF No. 143 at 10-11, 19-20.)

preponderance of the evidence that [Petitioner] and Renison were acting in a conspiracy." *Id.* at 154. The First Circuit held that the evidence was admissible under Fed. R. Evid. 801(d)(2)(E) "under the coconspirator/joint venture aegis." *Id.* at 154-55. The Court also noted that counsel might have made a tactical decision not to object because the victim's testimony "could have persuaded the jury that the more vocal Renison was the one to blame." *Id.* at 154 n.8.

Finally, Petitioner argued that the sentence was not procedurally or substantively reasonable. The First Circuit determined that the sentence was procedurally reasonable in that the Court provided a sufficient explanation of the sentence, particularly given that the sentence was within the guideline range. *Id.* at 156. The First Circuit also held that Petitioner failed to demonstrate that the sentence was not substantively reasonable. *Id.*

Petitioner sought to appeal from the First Circuit's decision. The Supreme Court denied certiorari. *DiRosa v. United States*, 135 S. Ct. 768 (2014) (Mem.).

Petitioner asserts that he signed his section 2255 motion on May 15, 2015. (Motion at 28.) The motion was filed timely on May 18, 2015.[2] (*Id.* at 1.)

## II.  DISCUSSION

### A.  Legal Standards

A person may move to vacate his or her sentence on one of four different grounds: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "that the court was without jurisdiction" to impose its sentence; (3) "that the sentence was in excess of the maximum authorized by law"; or (4) that the sentence "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a); *see Knight v. United States*, 37 F.3d 769, 772 (1st Cir. 1994).

---

[2] *See* 28 U.S.C. 2255(f) (providing a one-year limitation period running from the latest of several dates, one of which is "the date on which the judgment of conviction becomes final"). The Government does not dispute that the petition was timely. (Response, ECF No. 162 at 7 n.3.)

The burden is on the section 2255 petitioner to establish by a preponderance of the evidence that he or she is entitled to section 2255 relief. *David v. United States*, 134 F.3d 470, 474 (1st Cir. 1998); *United States v. DiCarlo*, 575 F.2d 952, 954 (1st Cir. 1978). When "a petition for federal habeas relief is presented to the judge who presided at the petitioner's trial, the judge is at liberty to employ the knowledge gleaned during previous proceedings and make findings based thereon without convening an additional hearing." *United States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993).

A collateral challenge is not a substitute for an appeal. *United States v. Frady*, 456 U.S. 152, 165 (1982); *Berthoff v. United States*, 308 F.3d 124, 127 (1st Cir. 2002). "Accordingly, a defendant's failure to raise a claim in a timely manner at trial or on appeal constitutes a procedural default that bars collateral review, unless the defendant can demonstrate cause for the failure and prejudice or actual innocence." *Berthoff*, 308 F.3d at 127-28. Procedural default is an affirmative defense. *Sotirion v. United States*, 617 F.3d 27, 32 (1st Cir. 2010). The First Circuit has recognized that "federal courts have the authority to consider procedural default *sua sponte.*" *Rosenthal v. O'Brien,* 713 F.3d 676, 683 (1st Cir. 2013) (citing *Brewer v. Marshall,* 119 F.3d 993, 999 (1st Cir. 1997)); *see also Daniels v. United States*, 532 U.S. 374, 382-83 (2001) (recognizing that "procedural default rules developed in the habeas corpus context apply in § 2255 cases") (citing *Frady*, 456 U.S. at 167-68).

An allegation of ineffective assistance of counsel can excuse a procedural default, but only if the petitioner demonstrates both that counsel's representation fell below an objective standard of reasonableness and that counsel's deficient performance prejudiced the petitioner's defense. *Turner v. United States*, 699 F.3d 578, 584 (1st Cir. 2012) (citing *Strickland v. Washington*, 466 U.S. 668, 688 (1984)); *Owens v. United States*, 483 F.3d 48, 63 (1st Cir. 2007). "The first prong

of the analysis, the 'performance' prong, is applied with deference to counsel's professional judgment, and is based on what counsel knew or should have known at the time counsel exercised such judgment." *United States v. Downs-Moses*, 329 F.3d 253, 265 (1st Cir. 2003). A district court reviewing a claim of ineffective assistance of counsel need not address both prongs of the test because a failure to meet either prong will undermine the claim. *Strickland*, 466 U.S. at 697. If a petitioner's "claims fail on the merits, his related claims that counsel rendered ineffective assistance in failing to press the claims at trial or on appeal must also fail." *Tse v. United States*, 290 F.3d 462, 465 (1st Cir. 2002).

"Evidentiary hearings on § 2255 petitions are the exception, not the norm, and there is a heavy burden on the petitioner to demonstrate that an evidentiary hearing is warranted. An evidentiary hearing 'is not necessary when a [§] 2255 petition (1) is inadequate on its face, or (2) although facially adequate, is conclusively refuted as to the alleged facts by the files and records of the case.'" *Moreno-Morales v. United States*, 334 F.3d 140, 145 (1st Cir. 2003) (citation omitted) (quoting *DiCarlo*, 575 F.2d at 954 (quotation marks omitted)). In determining whether an evidentiary hearing is required, the court must "take as true the sworn allegations of fact set forth in the petition 'unless those allegations are merely conclusory, contradicted by the record, or inherently incredible.'" *Owens*, 483 F.3d at 57 (quoting *Ellis v. United States*, 313 F.3d 636, 641 (1st Cir. 2002)). Summary dismissal of a motion is permitted when the allegations are "'vague, conclusory, or palpably incredible,'" even "'if the record does not conclusively and expressly belie [the] claim.'" *David*, 134 F.3d at 478 (quoting *Machibroda v. United States*, 368 U.S. 487, 495 (1962)). The Court can reasonably require a petitioner to supply the Court with salient details of the claim prior to permitting discovery or a hearing. *Id.* (holding that "the district court did not abuse its discretion in refusing to license a fishing expedition").

### B.  Claims and Analysis

#### 1.  Claim of prosecutorial misconduct for failing to prosecute Renison and claim that counsel was ineffective for failing to object to the grant of immunity

Petitioner argues in Grounds One, Two, and Ten (a) that the Government committed prosecutorial misconduct when it failed to prosecute Renison, and (b) that counsel was ineffective because counsel failed to object to the grant of immunity to Renison.  (Motion at 3-4, 22.)

The Government has broad discretion as to whether to prosecute a particular charge.  The Supreme Court has noted that "[i]n our criminal justice system, the Government retains 'broad discretion' as to whom to prosecute. . . . This broad discretion rests largely on the recognition that the decision to prosecute is particularly ill-suited to judicial review."  *Wayte v. United States*, 470 U.S. 598, 607 (1985) (quoting *United States v. Goodwin*, 457 U.S. 368, 380 n.11 (1982)).  Unless the decision is "'deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification,' including the exercise of protected statutory and constitutional rights," the decision whether to prosecute rests with the prosecutor.  *Id.* at 608 (quoting *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978)).  Petitioner has not alleged that the Government's decision to dismiss the charge against Renison was based upon an unjustifiable standard, nor would the record as it stands have supported such an allegation.

Similarly, "[t]he power to grant immunity is vested in the prosecutor.  'The government has broad discretion in its grants of immunity.  It is the [prerogative] of the Attorney General and his designees to determine whether a grant of immunity is "in the public interest" under 18 U.S.C. § 6003.'"[3]  *United States v. Washington*, 318 F.3d 845, 855 (8th Cir. 2003) (quoting *United States*

---

[3] Title 18 U.S.C. §6003 states:

> **(a)**      In the case of any individual who has been or may be called to testify or provide other information at any proceeding before or ancillary to a court of the United States or a grand jury of the United States, the United States district court for the judicial district in which the proceeding is or may be held shall issue, in accordance with subsection (b) of this section, upon the request of the

*v. Hooks*, 848 F.2d 785, 802 (7th Cir. 1988)); *cf. United States v. Davis*, 623 F.2d 188, 193 (1st Cir. 1980) (holding that as long as a defendant is not denied due process, the Government may refuse to seek immunity for defense witnesses).

Given the broad discretion afforded the Government, Petitioner's counsel had no legitimate basis on which to object to the Government's dismissal of the charge against Renison or to the grant of immunity to Renison. Counsel is under no obligation to raise a baseless objection. *See United States v. Hart*, 933 F.2d 80, 83 (1st Cir. 1991) ("'Counsel is not required to waste the court's time with futile or frivolous motions.'") (quoting *United States v. Wright*, 573 F.2d 681, 684 (1st Cir. 1978)). Counsel's failure to object does not constitute substandard conduct, and, given that an objection would have been futile, Petitioner was not prejudiced by the failure to object.[4]

---

United States attorney for such district, an order requiring such individual to give testimony or provide other information which he refuses to give or provide on the basis of his privilege against self-incrimination, such order to become effective as provided in section 6002 of this title.

**(b)** A United States attorney may, with the approval of the Attorney General, the Deputy Attorney General, the Associate Attorney General, or any designated Assistant Attorney General or Deputy Assistant Attorney General, request an order under subsection (a) of this section when in his judgment—

**(1)** the testimony or other information from such individual may be necessary to the public interest; and

**(2)** such individual has refused or is likely to refuse to testify or provide other information on the basis of his privilege against self-incrimination.

[4] Petitioner also appears to allege that counsel should have cross-examined Renison on whether he hoped to get anything in exchange for his testimony. (Motion, ECF No. 150 at 3.) On direct examination by the Government, Renison testified that he was granted immunity for his testimony. (Trial Tr. I at 93-94.) The Government asked: "Mr. Renison, are you aware that you are testifying today under what's called an immunity order that's been entered by the Court?" (*Id.* at 93.) Renison answered affirmatively. (*Id.*) The Government then asked: "Do you understand that it provides that any truthful testimony cannot be used against you in any criminal proceeding?" (*Id.*) Renison again answered affirmatively. (*Id.*) The Government also confirmed with Renison that he was originally charged by complaint in connection with the case against Petitioner, but that the complaint against Renison was later dismissed. (*Id.* at 93-94.) Thus, although Petitioner's counsel did not cross-examine Renison on the grant of immunity, the information was already presented to the jury. Furthermore, a review of counsel's cross-examination of Renison shows that, perhaps because Renison was not prosecuted and was granted immunity, the defense strategy was not to challenge Renison's credibility, but rather to bolster Petitioner's credibility by presenting Renison as an accomplished and honest businessman who believed in Petitioner's good faith. (*Id.* at 170, 178, 183-85.)

### 2. Claim that certain evidence should have been admitted

#### a. The escrow agreement

Petitioner argues in Grounds Three and Ten that counsel was ineffective because he failed to offer in evidence an escrow agreement to show that Petitioner did not intend to defraud the victim and did not control the victim's money.  (Motion at 8-9, 22-23.)[5]

A review of the record reveals that the Government offered the document in evidence at trial, that Petitioner's counsel did not object to the introduction of the evidence, and that the Court admitted the evidence.  (Trial Tr. I, ECF No. 142 at 60, 62.)  Petitioner's claim thus fails.

#### b. The video deposition of the victim

Petitioner argues in Grounds Five and Ten that counsel was ineffective because he failed to offer in evidence at trial a video deposition of the victim taken approximately six months before the trial.  (Motion at 12-13, 23.)  The Government had moved to depose the victim due to both the victim's declining health and a delay in the trial caused by the need to obtain records from overseas. (Conference Tr., ECF No. 138 at 2, 5.)  Petitioner contends that counsel should have offered the video deposition because the victim testified at deposition to Renison's extensive involvement and Petitioner's minimal involvement in the deal.  (Motion at 12.)

The victim testified at trial, and counsel cross-examined the victim regarding Renison's involvement.  (Trial Tr. I at 69, 73.)  Counsel elicited from the victim that Renison was the first person to propose the deal to him, that Renison made the presentation to the victim, and that Renison did all of the talking at the initial meeting.  (*Id.* at 69, 73.)

---

[5] In Petitioner's section 2255 motion, he refers to the document at issue alternately as an escrow agreement or as the "Castle Lodge loan agreement."  (Motion at 8.)

Counsel's strategy was to present both Petitioner and Renison as persons of good faith who intended to bring the real estate project to fruition. (Trial Tr. I at 170, 178, 183-85; Trial Tr. III, ECF No. 144 at 32, 46.) In his closing argument, counsel described Renison as a sincere person who was close to the victim's family. (Trial Tr. III at 46, 54.) Counsel argued that Renison was one of several persons who looked up to and believed in Petitioner. (*Id.* at 35.) Counsel further argued that the evidence showed that Petitioner and Renison were not lying to the victim, but rather that all three participated in a legitimate, but risky and ultimately unsuccessful, plan to make money. (*Id.* at 50-52.)

Counsel's strategical decision is entitled to deference and was reasonable, despite the fact that the strategy did not result in Petitioner's acquittal. *See Downs-Moses*, 329 F.3d at 265. In addition, a different approach (i.e., to characterize Renison more negatively) would not have given rise to "a reasonable probability" that "the result of the proceeding would have been different." *Turner*, 699 F.3d at 584. That is, given the evidence against Petitioner, there is not a reasonable probability that the use of the video deposition would have shifted responsibility to Renison and exonerated Petitioner. *See DiRosa*, 761 F.3d at 151-52. As the First Circuit noted, the evidence included Petitioner's hope that Renison's misrepresentations would cause the victim to wire the money, and Petitioner's creation of marketing materials that contained false statements about the project. *Id.* Accordingly, counsel's decision not to attempt to introduce the deposition testimony of the victim was not deficient, nor was Petitioner prejudiced by that decision.[6]

---

[6] Petitioner also appears to allege that the Government failed to inform him that it had deposed the victim, although at the same time, Petitioner acknowledges that he was present at the victim's deposition. (Motion at 12-13.) The Court arranged for the victim to be deposed in the courtroom in Petitioner's presence. (Conference Tr., ECF No. 138 at 6.) To the extent that Petitioner alleges that he was not informed of the victim's deposition, the record lacks support for the allegation.

### c.  The foreign attorney's email correspondence to the victim's counsel

Petitioner argues in Grounds Six and Ten that counsel was ineffective because he failed to offer in evidence correspondence from Petitioner's foreign attorney, Ildiko Sardy, to the victim's counsel.  (Motion at 13-14, 23.)  Petitioner has attached the correspondence to his section 2255 motion.[7]  (Exhibit, ECF No. 150-3.)

The trial testimony of the victim's counsel focused on emails that Petitioner sent to the victim's counsel, rather than on communications from Petitioner's foreign attorney.  (Trial Tr. I at 200.)  The victim's counsel testified on direct examination that he and Petitioner engaged in email correspondence from August 2009 to December 2009 regarding the return of the victim's money.  (*Id.* at 201-03.)  He testified that Petitioner told him in August 2009 that there were problems regarding the wiring of the money; that Petitioner told him in September 2009 that Petitioner had instructed his attorney to begin the process of returning the money to the victim and that the process had begun; that Petitioner told him in November 2009 that the funds had begun to move to the victim's bank account; and that Petitioner told him in December 2009 that Petitioner had just returned from Hungary and that a transfer "has been put to the bank," but the victim's attorney testified that there was no evidence that a transfer actually had taken place.  (*Id.*)  The Government then asked the victim's counsel whether he had any subsequent contact with Petitioner's foreign attorney, to which the victim's counsel responded that he had, but that the contact did not clarify the status of the funds.  (*Id.* at 203.)

Defense counsel, through his cross-examination of the victim's counsel, evidently attempted to establish that Petitioner cooperated with the victim's counsel.  (Trial Tr. I at 204-05.)

---

[7] According to Petitioner's section 2255 filings, the foreign attorney's name may be spelled Ildikó Sárdy.  (Exhibit, ECF No. 150-3 at 2.)

More specifically, defense counsel demonstrated that Petitioner voluntarily remained in contact with the victim's counsel.  (*Id.*)

Petitioner alleges that correspondence between his foreign attorney and the victim's counsel from October 2009 to March 2010 (i.e., after the victim wired the funds) would have demonstrated that Petitioner relied on his foreign attorney; that Petitioner did not control the victim's funds at that point; and that Petitioner did not intend to defraud the victim.  (Motion at 14.)

The First Circuit upheld the conviction based on Petitioner's conduct before the victim wired the money abroad.  *See DiRosa*, 761 F.3d at 150-52.   Evidence of subsequent correspondence from Petitioner's foreign attorney to the victim's counsel regarding the return of the money does not undermine the conviction.   Furthermore, counsel reasonably could have concluded that the correspondence would have been construed by the jury as Petitioner's continued effort to mislead or provide false assurances to the victim.  In short, the fact that counsel did not offer the correspondence did not constitute a substandard performance by counsel, nor did it prejudice Petitioner.

### d.  The foreign attorney's diversion of the victim's money to a power plant project

Petitioner argues in Ground Eight that evidence that Petitioner's foreign attorney diverted the victim's funds, without Petitioner's knowledge, from the real estate project to a power plant project, should have been admitted.  (Motion at 17.)  Petitioner claims that counsel was ineffective because he failed to provide an adequate argument for the admission of hearsay evidence of the foreign attorney's statements through Petitioner's testimony on direct examination.  (*Id.* at 19.) Petitioner contends that the evidence was relevant because it showed how the funds were used. (*Id.*)

In support of his argument, Petitioner notes that the transfer of funds to the power plant occurred after the transfer of $225,000 from the account of the project's foreign accountant, Janos Danyi, who was the Petitioner's foreign attorney's husband, to the account of Petitioner's wife. *DiRosa*, 761 F.3d at 149.  Petitioner argues that the timing of the transfers demonstrates that the money sent to Petitioner's wife was not from the victim's funds.  (Motion at 19.)

The Government filed a motion in limine to exclude evidence of Petitioner's efforts to repay the victim through the power plant project.  (Motion, ECF No. 111 at 1-2.)  In a chambers conference, defense counsel made the argument that Petitioner now contends counsel failed to make.  (Trial Tr. II, ECF No. 143 at 65-66.)  Specifically, the Court asked counsel: "The defendant's saying that he's using that to show what happened to the money; is that what you're saying?"  (*Id.* at 66.)  Counsel responded: "Yes."  (*Id.*)  The Court denied the Government's motion in limine without prejudice, but the Court also ordered defense counsel to inform the Court before asking Petitioner on direct examination about the power project.  (*Id.* at 68; Oral Order, ECF No. 112.)

During counsel's direct examination of Petitioner, counsel so informed the Court.  (Trial Tr. Excerpt, ECF No. 128 at 79-80.)  When the Court asked why Petitioner's testimony about the foreign attorney's statement was not inadmissible hearsay, counsel argued that it was relevant to Petitioner's "change of mind."  (*Id.* at 80.)  The Court then asked: "What's the relevance of that?" (*Id.*)  Counsel answered, "I don't know."  (*Id.*)  The Court ruled that the evidence was inadmissible, but left open that counsel may present further argument.  (*Id.*)

Counsel subsequently requested reconsideration of the ruling, and counsel offered documents containing communications from Petitioner's foreign attorney regarding the money trail.  (*Id.* at 86.)  The Court excluded the documents on the basis that the documents (a) were

irrelevant, (b) were hearsay, (c) were otherwise excludable under Fed. R. Evid. 403, and (d) lacked a foundation (at least for one of the documents).  (*Id.* at 87.)  The record thus establishes that contrary to Petitioner's contention, counsel argued for the introduction of evidence regarding a diversion of money to a power plant project.  That the argument did not persuade the Court does not render counsel's efforts to admit the evidence deficient.

### 3.  Claim that certain evidence should have been excluded

#### a.  Prior bad acts

Petitioner argues in Ground Four that the Court erred when it admitted the testimony of two victims whom Petitioner solicited in the late 1990s and in early 2000.  (Motion at 9-12.) Petitioner also contends that evidence of false statements on an application that he submitted to refinance his home mortgage should have been excluded.  (*Id.* at 9.)

In his direct appeal, Petitioner challenged the testimony, admitted under Fed. R. Evid. 404(b), of the two earlier victims on grounds that the evidence was unfairly prejudicial under Fed. R. Evid. 403.[8]  *DiRosa*, 761 F.3d at 152-53.  The First Circuit held that the Court did not abuse its discretion when the Court admitted the evidence.  *Id.* at 152-54.  An issue that the First Circuit has rejected on direct appeal may not be reviewed again through a section 2255 motion.  *Singleton v.*

---

[8] Fed. R. Evid. 403 states:

> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

Fed. R. Evid. 404(b) states in pertinent part:

> **(1)  Prohibited Uses.**  Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

> **(2)  Permitted Uses . . . .**  This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

*United States*, 26 F.3d 233, 240 (1st Cir. 1994); *Barrett v. United States*, 965 F.2d 1184, 1190 n.11 (1st Cir. 1992).  Because the issue was resolved on direct appeal, Petitioner may not rely upon the issue to attack the judgment collaterally in a section 2255 motion.  *See Singleton*, 26 F.3d at 240; *Barrett*, 965 F.2d at 1990 n.11.  Petitioner's claim regarding the testimony of the two prior victims thus fails.

The home mortgage refinancing application was the subject of a motion in limine that the Government filed pursuant to Fed. R. Evid. 608(b).[9]  (Trial Tr. Excerpt at 83-85.)  The Government sought leave to cross-examine Petitioner about false statements that Petitioner made on the application, which he had signed under penalty of perjury approximately one year prior to the events for which he was being prosecuted.  (Trial Tr. Excerpt at 83-85.)  Defense counsel objected, citing unfair prejudice.  (*Id.* at 84.)

The Court determined that the statements were relevant, were highly probative of Petitioner's character for truthfulness, and were close in time to the events at issue in the criminal prosecution.  (*Id.* at 84-85.)  The Court also concluded that the evidence was not unfairly prejudicial, and the Court allowed the inquiry.  (*Id.* at 85.)  Petitioner then admitted that he had falsely stated on the application that he had been employed with Renison at a financial company for six years at a particular salary.  (Trial Tr. Excerpt at 88-89, 106-07.)  On re-direct examination,

---

[9] Fed. R. Evid. 608(b) states:

> **Specific Instances of Conduct.** Except for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness. But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of:
>
> **(1)** the witness; or
>
> **(2)** another witness whose character the witness being cross-examined has testified about.
>
> By testifying on another matter, a witness does not waive any privilege against self-incrimination for testimony that relates only to the witness's character for truthfulness.

defense counsel elicited from Petitioner that at the time, Petitioner was experiencing financial difficulties, and that he had obtained permission from Renison to make the false statements. (*Id.* at 107.)

Petitioner's claim regarding the admissibility of the home mortgage refinancing application and the related testimony is procedurally defaulted because Petitioner failed to raise the issue in his direct appeal.

### b.  Excerpts of Petitioner's civil litigation deposition transcript

Petitioner argues in Ground Ten that counsel was ineffective because he failed adequately to object to the admission of Petitioner's civil deposition testimony. (Motion at 23.) Petitioner argues that this testimony was redundant and prejudicial. (*Id.*)

The Government moved in limine to admit Petitioner's civil deposition testimony, which the Government represented was taken during civil litigation that the victim had filed against Petitioner. (Motion, ECF No. 107 at 2.) At a pretrial conference, defense counsel acknowledged that Petitioner's admissions were admissible, whether they were made under oath or not, and his only objection was to the admission of the deposition transcript as a whole. (Conference of Counsel, ECF No. 141 at 3.) At trial, during a sidebar conference at the conclusion of the Government's case in chief, counsel told the Court that Petitioner had no objection to the admission of excerpts from Petitioner's civil deposition transcript because the testimony was not particularly prejudicial, and much of it "would actually be helpful" to Petitioner. (Trial Tr. II, ECF No. 143 at 59-60.) At a chambers conference thereafter, the parties informed the Court that they had agreed to the content of the deposition exhibit, and to the admission of the civil deposition testimony as a written exhibit. (*Id.* at 62.) The Court issued an order that mooted the motion in limine. (Order, ECF No. 124.)

In his motion, Petitioner did not explain how he was prejudiced by the deposition excerpts. Petitioner's claim thus fails because it is vague and unsupported, and because counsel's strategic decisions are entitled to deference. *See David*, 134 F.3d at 478 (summary dismissal is appropriate when the petitioner's claims are vague and unsupported); *Downs-Moses*, 329 F.3d at 265 (recognizing that under the first prong of the *Strickland* analysis, the court reviews counsel's performance "with deference to counsel's professional judgment").

### 4. Claim that the Court erred when it applied an enhancement for obstruction of justice

Petitioner argues in Ground Seven that the Court erred when it applied a two-level enhancement for obstruction of justice based on Petitioner's false trial testimony regarding statements to the victim about the existence of a board of directors and an advisory board for the real estate project. (Motion at 15; Sentencing Tr., ECF No. 145 at 45.) Petitioner maintains that the statements were not material to the victim's decision to wire the money. (Motion at 15.) Petitioner also alleges ineffective assistance of counsel regarding the enhancement. (*Id.*)

The Court concluded that there were "several independent bases, any one of which would entitle the Government" to an enhancement for obstruction of justice. (Sentencing Tr. at 43.) First, Petitioner gave false testimony and a subsequent false statement to the probation officer regarding the board of directors and the advisory board. (*Id.* at 28, 43.) Second, Petitioner testified falsely regarding his intent to repay the victim, and third, Petitioner testified falsely regarding whether money sent to him came from the victim's funds.[10] (*Id.* at 43-44.)

---

[10] The First Circuit explained in Petitioner's appeal that the victim's $600,000 "went on a whirlwind world tour," and that "[e]ventually, $225,000 of that money came back stateside and was transferred from [the foreign accountant's] account to an account held in the name of [Petitioner's wife]." *DiRosa*, 761 F.3d at 148-49.

Because Petitioner failed to raise on appeal the issue of the enhancement for obstruction of justice, the issue is procedurally defaulted.[11]   Petitioner's ineffective assistance claim also fails. First, counsel objected at sentencing to the enhancement for obstruction of justice.  In addition, although counsel did not raise the issue on appeal, Petitioner was not prejudiced.  Contrary to Petitioner's argument, proof of the victim's reliance on a false statement is not an element of the crime of wire fraud, nor is it a prerequisite to the Court's decision at sentencing to apply an enhancement for obstruction of justice.[12]   Therefore, counsel was not deficient for failing to raise the issue of reliance or lack of reliance.  *Hart*, 933 F.2d at 83.

### 5.   Claim that the evidence was insufficient

Petitioner argues in Grounds Nine and Ten that some of the financial transactions were not proven beyond a reasonable doubt, and that counsel was ineffective in his cross-examination of an agent with the Federal Bureau of Investigation regarding evidence of the financial transactions. (Motion at 20, 23.)  Petitioner's allegations relate to Government Exhibits 12, 12A, 12B, 13, 13A, 13B, which consist of two stipulations of the parties that the translation into English of two accompanying foreign bank account records was accurate.  (*Id.* at 20; Trial Tr. II, ECF No. 143 at 34-35.)  Petitioner also focuses on Government Exhibit 15, which was not introduced in evidence, but was used as a demonstrative aid during the agent's testimony to explain the monetary

---

[11] At sentencing, the Court recognized that counsel objected to the enhancement for obstruction of justice; therefore the procedural default is due to the failure to raise the issue on appeal.  (Sentencing Tr., ECF No. 145 at 45.)

[12] The elements of the crime of wire fraud are a "scheme to defraud," "the accused's knowing and willful participation in the scheme with the intent to defraud," and "the use of interstate or foreign wire communications to further that scheme."  *DiRosa*, 761 F.3d at 150 (quotation marks omitted).  U.S.S.G. § 3C1.1 relates to sentencing enhancements for obstruction of justice and provides:

> If (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense, increase the offense level by **2** levels.

transactions from the victim to foreign accounts and then back to an account held by Petitioner's wife.  (Trial Tr. II at 36-37.)

In essence, Petitioner argues that evidence of the financial transactions was insufficient. (Motion at 21.)  The First Circuit noted in Petitioner's direct appeal that the elements of the crime of wire fraud are a "scheme to defraud," "the accused's knowing and willful participation in the scheme with the intent to defraud," and "the use of interstate or foreign wire communications to further that scheme."  *DiRosa*, 761 F.3d at 150 (quotation marks omitted).  The Court observed that there was "no dispute that foreign wiring was used" to wire the victim's money abroad.  *Id.* n.3.  Although Petitioner does not specify the element of the crime that he believes is unsupported by the evidence, his claim fails because the First Circuit determined that there was sufficient evidence of wire fraud.  *DiRosa*, 761 F.3d at 152.  In addition, to the extent that Petitioner's sufficiency of the evidence challenge is based on evidence of the money flow, the claim is procedurally defaulted, and the record otherwise lacks evidence that counsel's performance was deficient or that Petitioner was prejudiced.  The claim, therefore, fails.

### 6.  Claim that the sentence is not substantively reasonable

Petitioner argues in Ground Eleven that the sentence is not substantively reasonable. (Motion at 24.)  Petitioner raised the issue in his direct appeal.  *DiRosa*, 761 F.3d at 155-56.  As explained in the discussion above regarding Ground Four of the petition, an issue that has been decided on direct appeal may not be used to attack the judgment collaterally in a section 2255 motion.  *See Singleton*, 26 F.3d at 240; *Barrett*, 965 F.2d at 1990 n.11.  Therefore, Petitioner is not entitled to relief.

### III.   CONCLUSION

Based on the foregoing analysis, an evidentiary hearing is not warranted under Rule 8 of the Rules Governing Section 2255 Cases.   In addition, I recommend that the Court deny Petitioner's motion for habeas relief under 28 U.S.C. § 2255.  I further recommend that the Court deny a certificate of appealability pursuant to Rule 11 of the Rules Governing Section 2255 Cases because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

### NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 3rd day of December, 2015.